The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY,<br><br>    Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS, INC., EXPRESS SCRIPTS ADMINISTRATORS, LLC, MEDCO HEALTH SOLUTIONS, INC., MERCK-MEDCO, ESI MAIL ORDER PROCESSING, INC., ESI MAIL PHARMACY SERVICE, INC., EXPRESS SCRIPTS PHARMACY, INC., EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC., OPTUMINSIGHT, INC., OPTUMINSIGHT LIFE SCIENCES, INC., THE LEWIN GROUP, INC., INGENIX PHARMACEUTICAL SERVICES, INC., INGENIX, INC., OPTUMRX, INC., and OPTUM, INC.,<br><br>    Defendants. | NO. 24-cv-49-BJR<br><br>**ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |

## I.    INTRODUCTION

This case concerns the national opioid epidemic, which has had far-reaching consequences for public health, social services, and the criminal justice system. Amended Compl. ¶ 35, Dkt. No. 80. Since 1999, over one million people have died from an overdose involving opioids, with

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 1

well over half of those deaths involving opioids prescribed by doctors to treat pain. *Id.* ¶ 29. The effects of the opioid crisis are visible throughout the nation, including in King County, where opioid use has reached crisis levels and continues to grow. *Id.* ¶¶ 33-34. Plaintiff King County ("the County") initiated the instant action alleging that Defendants[1] played a central role in the over-prescription, misuse, diversion, and abuse of opioids, and thereby intentionally created a public nuisance in violation of RCW § 7.48.130.

Before the Court is a Motion to Dismiss the County's Amended Complaint as to Defendants Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. (collectively, "Optum Defendants") for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), Dkt. No. 56. Having fully considered the materials and the relevant legal authorities, the Court denies Optum Defendants' Motion to Dismiss.[2] The reasoning for the Court's decision follows.

## II.     BACKGROUND

In an attempt to limit the fallout of the opioid epidemic, private and public litigants have filed hundreds of lawsuits against opioid manufacturers, distributors, and dispensers. In 2017, the Judicial Panel on Multidistrict Litigation consolidated those actions in a multidistrict litigation ("MDL") proceeding that is currently pending in the Northern District of Ohio, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804. The following year, the County initiated in Washington

---

[1] Defendants include Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; Merck-Medco; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Express Scripts Specialty Distribution Services, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; The Lewin Group, Inc.; Ingenix Pharmaceutical Services, Inc.; Ingenix, Inc.; OptumRx, Inc.; and Optum, Inc.

[2] The County's Amended Complaint contains citations to various documents that are not attached to the Amended Complaint nor hyperlinked. *See, e.g.*, Amended Compl. ¶ 5 n.1. As such, the Court has not accessed those documents.

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 2

state court an action against various opioid manufacturers, distributors, and pharmacies—not including Optum Defendants—for their alleged role in creating and perpetuating the opioid epidemic. *King Cnty. v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45231 (N.D. Ohio), Compl., Dkt. No. 1-3. That case was removed and consolidated into the MDL. *Id.*, Ntc. of Removal, Dkt. No. 1; Transfer Order, Dkt. No. 9. After the MDL court issued a moratorium on amending complaints, the County filed the instant action in Washington state court based on documents produced during MDL discovery. Compl., Dkt. No. 1-2; Pl.'s Resp. at 5, Dkt. No. 65. The case was subsequently removed to this Court. Ntc. of Removal, Dkt. No. 1.

The County filed an Amended Complaint alleging that Defendants—which include pharmacy benefit managers ("PBMs")[3] and related entities—played a crucial role in creating and perpetuating the opioid epidemic. *See, e.g.*, Amended Compl. ¶¶ 1-3, 10-22, 24-25, 99-101, 128, 174, 272, 455-61. Optum Defendants now move to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2). Def.'s Mot.

### III.   LEGAL STANDARD

Under Rule 12(b)(2), defendants may seek dismissal of an action due to lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The burden of establishing personal jurisdiction rests on the plaintiff. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima

---

[3] PBMs serve as intermediaries between a plan sponsor, or what one would commonly think of as an insurance company, and a pharmacy. *Kelley-Ross & Assocs., Inc. v. Express Scripts, Inc.*, No. 22-148, 2022 WL 1908917, at *1 (W.D. Wash. June 3, 2022). For example, "Express Scripts serves this intermediary role by processing claims for the insurance coverage of prescription benefits for many plan sponsors. To accomplish this, Express Scripts contracts with pharmacies so that they may provide services to a patient whose pharmacy benefits are administered by Express Scripts." *Id.*

facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Prima facie showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true. *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). Washington State's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Accordingly, the Court's "inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211. Due process, requires that defendants "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## IV.    DISCUSSION

There are two forms of personal jurisdiction: general and specific. *Picot*, 780 F.3d at 1211. However, the County has not argued (nor given the allegations in the Amended Complaint could it reasonably argue) that this Court has general jurisdiction over Optum Defendants, so the Court

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 4

focuses its analysis on specific jurisdiction. The Ninth Circuit employs a three-part test to assess whether defendants have sufficient contacts to subject them to specific personal jurisdiction:

> (1) The non-resident defendant[s] must purposefully direct [their] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [they] purposefully avail[] [themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant[s'] forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211. The plaintiff has the burden of demonstrating the first two elements, after which the defendants must show exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

Optum Defendants do not argue that the exercise of personal jurisdiction would not be reasonable. Therefore, the Court concludes that the third element of the specific jurisdiction test is satisfied. *See id.* As to the remaining two elements, the Court addresses them in turn below. Because the parties' arguments address Optum, Inc. separately from the other three Optum Defendants—OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc.—and these two groups of Defendants present different issues, the Court proceeds with the personal jurisdictional analysis separately as to these two groups.

**A. Optum, Inc.**

   **1. Whether the County Has Alleged Sufficient Facts Under *Calder* to Establish "Purposeful Direction" Element**

Under the test outlined above, a plaintiff asserting an intentional tort claim must first establish that the defendants "purposefully directed" their activities toward the forum state.

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 5

*Schwarzenegger*, 374 F.3d at 802. The purposeful direction requirement is analyzed under the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). The elements of the *Calder* test require the County to have sufficiently alleged that Optum Defendants: (1) committed an intentional act, (2) expressly aimed at Washington, (3) that caused harm that Optum Defendants knew was likely to be suffered in Washington. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Here, the County has satisfied all three prongs of the *Calder* test necessary to establish the purposeful direction element as to Optum, Inc.

a. <u>Intentional Act</u>

To satisfy the first prong of the *Calder* test, "the defendant[s] must act with the 'intent to perform an actual, physical act in the real world.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). In the Amended Complaint, the County alleges multiple intentional acts committed by Optum, Inc. For example, the County alleges that, in 2017, Optum, Inc. acquired DaVita Medical Group ("DaVita"). Amended Compl. ¶ 117. DaVita operates the Everett Clinic and the Polyclinic. *Id.* The Everett Clinic operates 30 care sites throughout King, Pierce, Skagit, and Snohomish counties that provide care for more than 330,000 patients. *Id.* The Polyclinic is a Seattle-based group of health care facilities with over 14 locations in Washington and 200 primary care and specialty physicians. *Id.* The County further asserts that

> [a]ccording to the "OptumWa.com" website, "[t]he Everett Clinic and The Polyclinic have been part of Optum since 2019." And as of April 2024, both the Everett Clinic and the Polyclinic will be renamed Optum. "Optum, through its management organizations ('Optum') provides non-clinical administrative services to support" the Everett Clinic and the Polyclinic, including "administrative support, business systems solutions, technical infrastructure [and] access to care innovations."

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 6

*Id.* ¶ 118. Additionally, the County alleges that "Optum, Inc. was actively involved in promoting opioid programs to its clients and the media and coordinating the efforts of its subsidiary entities . . . ." *Id.* ¶ 174. Specifically, Optum, Inc. lobbied state governments to promote its opioid programs, while Optum, Inc. employees collaborated with opioid manufacturer Purdue Pharma ("Purdue") on studies and presentations that promoted opioid use. *Id.* ¶¶ 174, 305, 313.

Optum Defendants contend that the County overstates Optum, Inc.'s relationship to the Everett Clinic and the Polyclinic and improperly attributes contacts that Optum, Inc.'s subsidiaries have with Washington to Optum, Inc. Def.'s Mot. at 10-11; Def.'s Reply at 3-4, Dkt. No. 75. However, Optum Defendants do not contest that Optum, Inc. acquired those Clinics, or that Optum, Inc. is involved in the Clinics' operations. *See generally* Def.'s Mot.; Def.'s Reply. Therefore, the Court takes the County's allegations regarding Optum, Inc.'s involvement with the Everett Clinic and the Polyclinic as true. *See AT & T*, 94 F.3d at 588. As such, the Court concludes that the County's allegations are sufficient at the motion to dismiss stage to establish that Optum, Inc. committed multiple intentional acts, including its acquisition and involvement in the operation of the Everett Clinic and Polyclinic and research and marketing efforts. *See* Amended Compl. ¶¶ 117-18, 174, 305, 313; *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806).

      b.  Expressly Aimed at the Forum State

Under the next prong of the *Calder* test, the "express aiming" prong, courts assess defendants' connection to the forum state. *Picot*, 780 F.3d at 1214. The inquiry centers on whether the defendants specifically targeted the forum state. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Defendants do not expressly aim their activities at the forum state when the unilateral activity of a plaintiff or third

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 7

1    party is the defendants' only connection to the forum state. *Walden*, 571 U.S. at 284-85. Rather, the
2    focus is on the contacts that the defendants create with the forum. *Id.* at 284.

3    In *Calder*, the U.S. Supreme Court held that a Florida-based reporter and editor for the
4    National Enquirer were subject to personal jurisdiction in California for an allegedly libelous article
5    that they wrote about a California resident. *Calder*, 465 U.S. at 784-86, 788-89. The defendants
6    argued that their conduct was not expressly aimed at California because, as employees, they could
7    not control their employer's marketing activity, and "[t]he mere fact that they [could] 'foresee'" the
8    National Enquirer circulating their article in California was insufficient to establish personal
9    jurisdiction. *Id.* at 789. The Court rejected the defendants' arguments because the defendants wrote
10   the article knowing it "would have a potentially devastating impact" in California, where the
11   National Enquirer had its "largest circulation." *Id.* at 789-90.

12   Here, Optum, Inc. acted similarly to the defendants in *Calder*, insofar as Optum, Inc.
13   intentionally engaged in research and marketing efforts, despite knowing that those actions would
14   have an impact in the forum state. *See id.*; *see also infra* § IV.A.1.c. Additionally, Optum, Inc.'s
15   acquisition of and involvement with Washington-based healthcare clinics constitute express aiming
16   at the forum. *See* Amended Compl. ¶¶ 117-18; *cf. Holliday v. Lifestyle Lift, Inc.*, Case No. 09-4995,
17   2010 WL 3910143 (N.D. Cal. Oct. 5, 2010) (finding express aiming because "[b]y operating
18   medical centers in California and applying the allegedly unlawful employment practices here,
19   defendants both targeted California and, as a consequence could reasonably have suspected that
20   California employees would be harmed by such conduct"). Therefore, the Court concludes that the
21   second prong of the *Calder* test is satisfied.

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 8

       c.   <u>Causing Harm that Optum, Inc. Knows is Likely to Be Suffered in the Forum State</u>

Under the third prong of the *Calder* test, courts ask whether the defendants knew that their intentional acts would cause harm in the forum state. *Schwarzenegger*, 374 F.3d at 803. The focus of the inquiry "is not the magnitude of the harm, but rather its foreseeability." *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1141 (S.D. Cal. 2016).

The County alleges that Defendants, including Optum, Inc., received, analyzed, and tracked detailed claims data for billions of prescriptions, including opioid prescriptions. Amended Compl. ¶ 9. As a result, Defendants had access to real-time data "relating to drug utilization and prescribing patterns across multiple retail stores in diverse geographic locations." *Id.* For example, Defendants had information concerning opioid use patterns associated with opioid abuse, including the deadly "Holy Trinity" combinations: multiple opioid prescriptions for one individual, prescriptions for dangerously high volumes or dosages of opioids, and doctor shopping (the practice by which individuals receive multiple opioid prescriptions from unknowing prescribers). *Id.* ¶¶ 10-11. The County further alleges that Defendants touted their ability to use such information to identify instances of opioid overprescribing, abuse, and diversion. *Id.* ¶ 12. But rather than use this data to curb opioid abuse, "Defendants sold the data to third-party vendors who in turn resold the data to the Opioid Manufacturers, like Purdue, who used the data to stoke increased sales of opioid drugs to physicians." *Id.* ¶ 13. From these allegations, one may reasonably infer that Optum, Inc. knew that its efforts to increase opioid sales would likely cause harm in Washington State. *See Schwarzenegger*, 374 F.3d at 803. Therefore, the Court concludes that the third prong of the *Calder* test is satisfied.

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 9

Accordingly, the Court concludes that the County has adequately alleged the purposeful direction element of the specific jurisdiction test.

### 2. Whether the County Has Alleged Sufficient Facts to Establish the County's Harm "Arises Out of or Relates to" Optum, Inc.'s Contacts with Washington State

Because the County has established the first element under the test for specific personal jurisdiction—purposeful direction—the Court also considers whether the County's claim "arises out of or relates to" Optum Defendants' contacts with Washington State. In this analysis, courts must determine if the plaintiff would not have been injured "but for" the defendants' conduct directed toward the plaintiff in the forum state. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1988). However, in applying this test, the Ninth Circuit does not require a strict causal relationship. Rather, "a lawsuit arises out of [] defendant[s'] contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996).

Taking the allegations from the Amended Complaint as true, the County adequately alleges that Optum, Inc.'s involvement with the Everett Clinic and the Polyclinic gave Optum, Inc. access to patient information that Optum, Inc. used to profit from the growing opioid epidemic. *See* Amended Compl. ¶¶ 9-13, 15, 33-34, 37, 117-18; *AT & T*, 94 F.3d at 588. Similarly, the County adequately alleges that Optum, Inc.'s research, marketing, and lobbying efforts contributed to the influx of opioids in King County and the many harms resulting from those efforts. *See id.* ¶¶ 33-34, 37, 174, 305, 313. Thus, the County's allegations sufficiently establish that "but for" these actions, the opioid crisis would not have been as severe in King County. *See Panavision Int'l*, 141 F.3d at 1322; *Fireman's Fund Ins.*, 103 F.3d at 894.

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 10

Accordingly, the County's allegations are sufficient to establish that this Court may exercise personal jurisdiction over Optum, Inc. *Cf. In re McKinsey & Co., Inc. Nat'l Opiate Consultant Litig.*, 637 F. Supp. 3d 773, 783 (N.D. Cal. 2022) (finding defendant McKinsey & Company was subject to personal jurisdiction in the relevant forum based on work it performed for opioid companies).

### B. OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc.

#### 1. Whether the County Has Alleged Sufficient Facts Under *Calder* to Establish "Purposeful Direction" Element

a. <u>Intentional Act</u>

The County has also satisfied all three prongs of the *Calder* test necessary to establish the purposeful direction element as to OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. As to the first prong, the County alleges multiple intentional acts taken by those three entities. For example, the County alleges that "OptumInsight"—comprised of OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; The Lewin Group, Inc.; Ingenix; and their predecessors, successors, and affiliates— "worked directly with the Opioid Manufacturers to convince patients, prescribers, payors and the public that long term opioid use was appropriate chronic pain treatment and that opioids were not addictive." Amended Compl. ¶ 99. More specifically, the County alleges that OptumInsight collaborated with opioid manufacturers on research and marketing projects to promote opioid sales. *See, e.g.*, *id.* ¶¶ 307-08, 313-17. Additionally, the County alleges that OptumInsight (1) provides services to or acts on behalf of health plans in Washington, including Molina Healthcare of Washington and Kaiser Foundation Health Plan of Washington; and (2)

published a "medical payer list"[4] in July 2023 that disclosed numerous Washington-based payers who receive OptumInsight services. *Id.* ¶ 102.

Optum Defendants argue that the County improperly consolidates OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. together as "OptumInsight" without ever pleading the specific allegations necessary to establish the requisite minimum contacts between any of those entities and Washington State. Def.'s Mot. at 8. To be sure, "jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). However, because the County asserts that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. each engaged in the same conduct, the Court considers the allegations regarding OptumInsight to be applicable to all OptumInsight entities. Amended Compl. ¶ 98; Pl.'s Resp. at 12-13. Therefore, the County's allegations regarding OptumInsight's research and marketing activities, and provision of healthcare services are sufficient to establish for purposes of refuting a motion to dismiss that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. committed multiple intentional acts.

Moreover, the County's Amended Complaint also contains allegations regarding activities of individual OptumInsight entities. Regarding OptumInsight Life Sciences, Inc., the County alleges that the entity (1) collaborated with Purdue to conduct research, which was designed to assess the value and success of certain opioids to assist Purdue in marketing those drugs; (2) provided Purdue with data for the same purpose; and (3) collaborated with other entities to develop

---

[4] A medical "payor" or "payer" "is the entity that pays for services rendered by a healthcare provider. The payor may be a commercial insurance company, government program, employer, or patient." *See* Am. Med. Ass'n, Payor Contracting 101, https://www.ama-assn.org/system/files/payor-contracting-toolkit.pdf (last visited Dec. 10, 2024).

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 12

metrics to measure opioid abuse. Amended Compl. ¶¶ 173, 306, 311. Regarding The Lewin Group, Inc., the County alleges that the entity collaborated with Purdue to help it market OxyContin by conducting studies to assess OxyContin's impact on patients with moderate-to-severe osteoarthritis pain. *Id.* ¶ 309. These allegations are sufficient at this stage to show that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. each committed intentional acts. Therefore, the first prong of the *Calder* test is satisfied as to those three defendants.

b.   Expressly Aimed at the Forum State

The County has sufficiently alleged that actions of OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. were expressly aimed at Washington. Notably, OptumInsight, Inc. entered contracts with Washington-based payers. *Id.* ¶ 102; *cf. Dole Food*, 303 F.3d at 1112 (concluding that European defendants "expressly aimed" at California, the forum state, since they "communicated directly with Dole's California managers to [fraudulently] induce them . . . to enter into significant and detrimental contractual arrangements"). Regarding the other contacts that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. had with Washington State, Optum Defendants argue that the County improperly relies on Purdue's contacts with the forum to establish personal jurisdiction. Def.'s Reply at 4-7. But this argument fails because the County's allegations show that the individual entities *themselves* intentionally engaged in marketing and research efforts, despite knowing that such efforts would have an impact in King County. *See, e.g.*, Amended Compl. ¶¶ 306, 309, 311, 315-17 (alleging that "Defendant The Lewin Group also conducted numerous projects for Purdue to help it market OxyContin and other opioids" and "OptumInsight Life Sciences also provided Purdue with data showing utilization of Purdue's Butrans drug, as well as that of competitor Endo's Opana ER, for Purdue to assess the

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 13

success and value of its opioids"); *cf. Calder*, 465 U.S. at 789-90. Those contacts are not merely "'random,' 'fortuitous,' or 'attenuated.'" *Burger King*, 471 U.S. at 475 (citations omitted). Therefore, the second prong of the *Calder* test is satisfied.

      c. <u>Causing Harm that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. Know is Likely to Be Suffered in the Forum State</u>

As with Optum, Inc., the County adequately alleges that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. had knowledge that their involvement in the Washington State healthcare system and their research and marketing efforts would likely contribute to the harms that give rise to the County's public nuisance claim. *See supra* § IV.A.1.c; *Schwarzenegger*, 374 F.3d at 803. The County's allegations regarding Optum, Inc.'s access to opioid-related patient information and selling of that information applies equally to OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. Amended Compl. ¶¶ 9-13. Therefore, those allegations are also sufficient to raise an inference that that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. knew that their efforts to increase opioid sales would likely cause harm in Washington State. *See Schwarzenegger*, 374 F.3d at 803. As such, the third prong of the *Calder* test is satisfied.

Accordingly, the Court concludes that the County has adequately alleged the purposeful direction element of the specific jurisdiction test with respect to OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc.

  **2. Whether the County Has Alleged Sufficient Facts to Establish the County's Harm "Arises Out of or Relates to" the Contacts OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. had with Washington State**

Because the County has established the first element under the test for specific personal jurisdiction, the Court also considers whether the County's claim "arises out of or relates to" the contacts OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. had with Washington State. Allegations in the Amended Complaint adequately establish that the research and marketing efforts of those three entities contributed to the influx of opioids in King County and the many harms resulting from those efforts. Amended Compl. ¶¶ 33-34, 37, 306, 309, 311, 315-17. Additionally, the County adequately alleges that OptumInsight, Inc.'s contractual relationships with Washington-based medical payers provided OptumInsight, Inc. with access to patient information that OptumInsight, Inc. used to increase opioid sales, which also exacerbated the effects of the opioid epidemic in King County. *Id.* ¶¶ 9-13, 15, 33-34, 37, 102. Therefore, the County's allegations are adequate to establish that its claim "arises out of or relates to" the contacts that OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. had with Washington State. *See Picot*, 780 F.3d at 1211; *Panavision*, 141 F.3d at 1322; *Fireman's Fund Ins.*, 103 F.3d at 894.

Accordingly, the County's allegations are sufficient to establish that this Court may exercise personal jurisdiction over OptumInsight, Inc., OptumInsight Life Sciences, Inc., and The Lewin Group, Inc. *Cf. In re McKinsey & Co.*, 637 F. Supp. at 783.

## V.   CONCLUSION

For the foregoing reasons, Certain Defendants' Motion to Dismiss (Dkt. No. 56) is DENIED.[5]

**IT IS SO ORDERED.**

---

[5] The County's request in the alternative for jurisdictional discovery is DENIED as moot. Pl.'s Resp. at 17-18.

DATED this 7th day of January 2025.

_____
Barbara Jacobs Rothstein
United States District Court Judge

ORDER DENYING CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

- 16