The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KING COUNTY,

                Plaintiff,

    v.

EXPRESS SCRIPTS, INC., EXPRESS SCRIPTS ADMINISTRATORS, LLC, MEDCO HEALTH SOLUTIONS, INC., MERCK-MEDCO, ESI MAIL ORDER PROCESSING, INC., ESI MAIL PHARMACY SERVICE, INC., EXPRESS SCRIPTS PHARMACY, INC., EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC., OPTUMINSIGHT, INC., OPTUMINSIGHT LIFE SCIENCES, INC., THE LEWIN GROUP, INC., INGENIX PHARMACEUTICAL SERVICES, INC., INGENIX, INC., OPTUMRX, INC., AND OPTUM, INC.,

                Defendants.

Case No. 2:24-cv-00049-BJR

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.     General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. Nothing in this protocol shall require any party that is reproducing documents that were first produced in other litigation into this litigation to reformat or modify those reproductions except as set forth herein.

3. The production of documents and ESI by the Parties also shall be subject to the provisions of any orders concerning confidentiality, privilege, and protected health information as agreed to among the Parties and entered by the Court in this action.

4. Nothing in this Stipulation shall be deemed to constitute a waiver of any objections to the discoverability, admissibility, or confidentiality of documents or ESI that a Producing Party may have with respect to any discovery request.

5. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.     ESI Disclosures**

Within 30 days of the entry of this Order, the parties shall meet and confer to discuss custodians, non-custodial data sources, third-party data sources (if any) and inaccessible data (if any) (the "Data Sources"). Any disputes should promptly be submitted to the Court for resolution.

Any party may utilize existing prior disclosures to disclose these Data Sources, particularly with respect to material that has been or will be produced in this litigation that has already been produced in related litigation. In the event a party learns that additional Data Sources not disclosed in a prior disclosure are relevant to this litigation, the party will disclose such supplemental new Data Sources.

**C.     ESI Discovery Procedures**

1.     **On-site inspection of electronic media.** Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.     **Search methodology.** The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken, or disclose such information to the extent the Producing Party relies on materials already produced in other litigation. The parties will engage in a meet and confer process regarding any additional terms sought by the non-producing party. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.,* "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.,* "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

3. **Format.** The parties agree to the production format attached as Appendix A.

4. **De-duplication.**

   A. To the extent exact duplicate documents reside within the producing party's ESI data set, the producing party shall produce only a single, deduplicated copy of a responsive Document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file as described in Appendix A.

   B. A producing party shall de-duplicate ESI across custodians and populate a field of data that identifies each custodian who had a copy of the produced document (the "All Custodians" field) in addition to a separate field of data identifying the custodian whose document is produced; such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A producing party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "All Custodians" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

5. **Email Threading.** The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. The use of email threading does not waive any Party's right

to request, or oppose a request, for a less inclusive copy of any particular email, should good cause warrant the request.

6. **Production of Known Responsive Documents.** The Parties agree that no Document that is responsive to a Receiving Party's Document request shall be withheld solely on the basis that the Document is not captured by the Parties' agreed-upon search parameters and methodology.

7. **Parent–Child Relationships.** The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced, except any attachments that must be withheld or redacted and logged based on privilege or work-product protection. The Parties acknowledge and agree that parent–child relationships within a Document Family (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved. Responsive non-privileged electronic documents attached to an email or embedded within other electronic documents and hard-copy documents attached or appended to hard-copy documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document. The Producing Party shall insert a slipsheet for any attachment over which the Producing Party claims privilege or otherwise withholds under applicable law or order or agreement of the parties, while maintaining the original consecutive order of the attachment(s). An attachment that is part of a responsive family but contains no information relevant to the litigation may be slipsheeted.

8. **Productions From Other Proceedings**. The production of documents made by Defendants in other civil investigations, litigations, or administrative actions may be reproduced in the format in which they were previously produced, including any previously produced confidentiality designations, redactions, metadata, load files, and accompanying text files. In that

event, any privilege log or other record of withheld or redacted information shall be provided at the time the records are produced.

**D.     Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

- A. Deleted, slack, fragmented, or other data only accessible by forensics.
- B. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
- C. On-line access data such as temporary internet files, history, cache, cookies, and the like.
- D. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).
- E. Back-up data that are substantially duplicative of data that are more accessible elsewhere.
- F. Server, system or network logs.

    G.    Data remaining from systems no longer in use that is unintelligible on the systems in use and is substantially duplicative of data more accessible elsewhere.

    H.    Electronic data (*e.g.,* email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.,* iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.**    **Privilege Logs**

    1.    A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order.

    2.    Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after delivering a production unless an earlier deadline is agreed to by the parties.

    3.    Redactions need not be logged so long as the basis for the redaction is clear on the redacted document (See Appendix A).

    4.    With respect to privileged or work-product information generated after the filing of the complaint by or for litigation counsel, or other counsel as agreed by the parties, the parties are not required to include any such information in privilege logs.

    5.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    6.    Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall

not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness or segregation of privileged or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

7. Privilege logs will be produced to all other parties on a rolling basis no later than 60 days after the last production from a custodial or non-custodial source is delivered to the receiving party.

8. In connection with any reproduction of privileged documents from *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio), Defendants agree to provide the privilege log associated with such documents to Plaintiff in this litigation.

9. The Parties agree that the following categories of documents are presumptively privileged and shall not be logged: (i) outside counsel's files relating to the firm's involvement in providing legal advice to Party in connection with any opioid related litigation or investigation, and (ii) communications between a Party and its outside counsel regarding any opioid litigation, investigation(s) relating to litigation or potential litigation, or other proceedings related to opioids, provided the communications are protected from disclosure under Washington law by either the work product doctrine or other applicable privilege.

10. The Receiving Party shall provide written notice to the Producing Party of any Privilege Log entries that it asserts are not Privileged or that it asserts require further explanation within 60 days of receiving the Privilege Log. The Parties agree to meet and confer to address the issues raised in any such correspondence. To the extent the parties are unable to resolve the dispute,

the Parties agree to raise the issue to the court in the same manner established for any other discovery dispute.

**F.     Confidentiality Designation**

1. To the extent any Document or ESI (or portion thereof) produced as a TIFF image is designated as "Confidential," "Confidential Health Information," "Highly Confidential," "Highly Confidential—Attorneys' Eyes Only," or "Highly Confidential—P&T Committee Member Identifying Information" pursuant to any applicable stipulation or order concerning confidentiality in this action, the Producing Party shall electronically brand the Confidentiality Designation on the image at a location that is reasonably designed to avoid concealing or obscuring any information from the source Document.

**G.     No Waiver**

1. Nothing in this Stipulation shall be deemed to be a waiver of any party's right seek modification of this agreement, or to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-upon search terms, techniques, or tools (including any proposed as supplements).

2. The production of any documents or information in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the Producing Party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

DATED this 28th day of July, 2025.

| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN, LLP** | **KELLER ROHRBACK L.L.P.** |
| By */s/ Alicia Cobb* <br> Alicia Cobb (WSBA #48685) <br> Nolan Anderson (WSBA #59691) <br> 1109 First Avenue, Suite 210 <br> Seattle, Washington 98101 <br> T: (206) 905-7000 <br> F: (206) 905-7100 <br> aliciacobb@quinnemanuel.com <br> nolananderson@quinnemanuel.com | By */s/ Juli E. Farris* <br> Derek W. Loeser, WSBA #24274 <br> David J. Ko, WSBA #38299 <br> Alison S. Gaffney, WSBA #45565 <br> Juli E. Farris, WSBA #17593 <br> Andrew Lindsay, WSBA #60386 <br> Lauren Matosziuk, *state admission pending* <br> 1201 Third Avenue, Suite 3400 <br> Seattle, WA 98101 <br> Phone: (206) 623-1900 <br> Fax: (206) 623-3384 |
| Michael Lyle (*pro hac vice*) <br> Jonathan G. Cooper (*pro hac vice*) <br> 1300 I St. NW, Suite 900 <br> Washington, DC 20005 <br> T: (202) 538-6600 <br> F: (202) 538-6700 <br> mikelyle@quinnemanuel.com <br> jonathancooper@quinnemanuel.com | ***Attorneys for Plaintiff*** |
| Danielle L. Gilmore (*pro hac vice*) <br> Sage R. Vanden Heuvel (*pro hac vice*) <br> Kiel B. Ireland (*pro hac vice*) <br> 865 S. Figueroa St., 10th Fl. <br> Los Angeles, CA 90017 <br> T: (213) 443-3000 <br> F: (213) 443-3100 <br> daniellegilmore@quinnemanuel.com <br> sagevandenheuvel@quinnemanuel.com <br> kielireland@quinnemanuel.com | |
| ***Attorneys for Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Express Scripts Specialty Distribution Services, Inc.*** | |

AGREEMENT RE DISCOVERY OF ELECTRONICALLY STORED
INFORMATION AND ORDER
(2:24-cv-00049-BJR) - 10

**MCDOUGALD LAW GROUP P.S.**

By */s/ Shannon L. McDougald*
Shannon L. McDougald (WSBA #24231)
7900 SE 28th Street, Suite 500
Mercer Island, WA 98004
T: (425) 455-2060
F: (425) 455-2070
smcdougald@mcdougaldlaw.com


**ALSTON & BIRD LLP**
Brian D. Boone (*pro hac vice*)
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
F: (704) 444-1111
brian.boone@alston.com

Caroline Rawls Strumph (*pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309
T: (404) 881-7000
F: (404) 881-7777
caroline.strumph@alston.com

Alexander Akerman (*pro hac vice*)
Omar Morquecho (*pro hac vice*)
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
T: (213) 576-1000
F: (213) 576-1100
alex.akerman@alston.com
omar.morquecho@alston.com

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

Dated this 31st day of July, 2025.

*Barbara J. Rothstein*

HONORABLE BARBARA J. ROTHSTEIN
United States District Court Judge